Marrero v. Coate Good morning. Good morning. Good afternoon, Your Honors. I guess it is. William J. Mellie on behalf of Officer William Coate. It's interesting that I get eight minutes, which is actually 12 times the duration of when my client with three other officers entered this private parking lot on a wellness tour within the City of Hartford to when the events ended. The actual encounter with the plaintiff's decedent is less than half of that 40 seconds. So, this Court is being asked to interpret the human behavior of all these officers, mine particularly, in dealing with the circumstances that arose within those 40 seconds. It's actually the jury that's being asked to do that, no? Well, I'm asking this Court on the basis of qualified immunity with regard to the conduct of Officer Coate in discharging his weapon. And the question is really whether there's a view of the facts here under which it was clearly unlawful for Officer Coate to discharge his weapon as he did. Or for the Court to determine whether there is no question but that he should not have fired the gun. Because the question is, would reasonable persons confronted with what Officer Coate did in a safe time frame never have acted? And I submit that there is no case law with regard to the type of specificity that would have put him on notice that that type of conduct is never appropriate. Doesn't it depend though on the starting facts? In other words, there are bullets that hit, among other things, the victim from behind. And there's at least a view of the facts under which the car was not headed either towards Officer Coate or towards his fellow officers. There is presumably a contrary view of the evidence, but if you take the evidence in the light most favorable to the plaintiff's estate, why isn't shooting somebody from behind when the car is assumed not to be headed towards an innocent something that would be clearly unlawful? I think that I would encourage the Court to examine the video. And that's where I get the time frame of the 40 seconds because there's a timer on it. And as Judge Edgington notes, the video is from the far side of the parking lot. So we don't have great detail in terms of everything that's going on. But we do have a sense of what's going on. And the fact is, as opposed to the Cowan case that Judge Edgington talks about, which is on a highway type of area, this is a very compact private parking lot where the plaintiff's decedent is in the last parking lot all the way in on the right. And it's total by happenstance that the cruiser comes in not focused at all on the plaintiff's decedent or the other occupants of the vehicle, but rather on this purported drug dealer that apparently left a bike for no apparent reason behind this vehicle. The fact of the shots has to be considered in light of the conduct of the plaintiff's decedent. Well, excuse me, Mr. Miller. I very much take your point. But does the officer even testify that he saw where Officer Medina was, for example? I think it's Medina, right, is the other officer? Correct. Or that he understood exactly where he was or that he was in danger? Is there any statement at all in the deposition that I feared for the life of Officer Medina? Not specifically, but it has to be taken in the context of his overall testimony, which is that they are confronted with a driver who is clearly not responsive to uniformed officers. There's a cruiser that moves physically to block him. There are orders being made. There is contact with his window, stop, show us your hands. And Officer Cody testified that he's aware in general. He's operating with the idea his peripheral is there. It's a very tight space, but he's focused. If there's any officer anywhere around, without any testimony or indication at this stage of the record that he's specifically concerned about other officers, he can just, given the fact that there is an officer on foot somewhere in the vicinity, he can shoot those people to not let them get away? No. The other officer is somewhere to his left. He testifies he's not certain exactly where, but he knows it's there. And he likewise knows that the officer, Iovana, is off. Well, if he's not certain, why isn't this a case, I think as my two colleagues have already started asking, where there are facts that need to be determined by a jury in analyzing this whole scenario before applying the law? Because we start off with what a reasonable officer would do. They're there in that situation. Just in terms of . . . A reasonable officer, in my experience, and I've had a lot of experience not as an officer, but certainly reviewing officers' actions, is not to end up shooting somebody in the back. Well, that has to be taken into context, because as . . . Well, then, that's what juries are for. Take it into context with expert evidence on what is and is not reasonable for an officer to do. The shot . . . Do we have any of that in front of us at this point? The shots are fired . . . Do we have any of that evidence? I submit that there is, because . . . Expert evidence on what's reasonable under circumstances, as you want to paint them? Judge Edgington chose not to accept the opinion of our expert. It's in the record. I mean, that was part of our motion for summary judgment. We have an expert that said the conduct was reasonable, but Judge Edgington went off on the expert in the Cowan case and used him to explain what . . . So, you've got dueling experts? And the plaintiffs have their own point of view, but . . . Right. But . . . That's why we have juries. But I'm saying, if this Court looks at it, the shots are fired in less than two seconds. The first three go through the front of the windshield, which means that Officer Cody is in a position where he is in front of that vehicle. The other shot . . . Is there a view of the facts where he is protected by the police cruiser? That's the position of the plaintiff, and that's what Judge Edgington found. Excuse me. So, are we to say that it is an undisputed fact that Officer Cody himself was in the path of the oncoming car? I thought that was a disputed fact. Well, the point is, he's standing . . . Assuming he fires straight, he's in front of the vehicle. Now, this car has already hit the fence in the back, has gone forward, is disregarding. Is the Marrero vehicle going to strike the cruiser that's going to cause Officer Cody? We don't know, but the significance of the actual bullets is that the car is moving at an exceptionally fast rate of speed from a very short distance, which explains . . . because there's no evidence that Officer Cody is moving. The vehicle is moving, and those shots go off within that extremely limited time period. So, just in terms of the qualified immunity point of view here, the case that Judge Edgington relied upon is fifteen years old. In Sensen, there's been all these other cases that talk about the need for specificity. So, the question is . . . Excuse me. Appreciating the dilemma that an officer faces in having to act fast, isn't it a rock-bottom requirement of the use of deadly force that somebody be in actual danger? So, our point . . . The officer has some reasonable belief that other people are in danger, or he is in danger. The other officers are present with him, and the testimony by Officer Medina that he was right there, and at the end of the day, he thinks he may even have been struck by the car, puts him there, which makes the officer . . . Wait, wait. He was right there, meaning on foot in the vicinity. He may have been struck by the side-view mirror in a situation where he's not even absolutely sure that he was, and there is no evidence that Officer Cody was aware that Officer Medina was that close to the car. Now, again, I'm not saying the officer did anything wrong here at the end of the day. The question is, is this a case where we can say, based on undisputed facts, that there's qualified immunity, or is this a case where, as Judge Edginton held . . . I mean, what he held was, there are issues of fact that need to be resolved, and I thought our case law said we don't even have jurisdiction over that determination. We only have jurisdiction if, on the undisputed facts, there is qualified immunity. Judge Edginton did not talk about the totality of the circumstances of Officer Cody being in a very tight situation with an uncooperative, apparently some type of person, violating appropriate legal instructions, and other officers are right there in that zone. He did not address that. No. When some person does something that I would not advise, that I think is dangerous, that I think is bad behavior, by trying to get away in this situation, and there are officers around, the undisputed legal ruling is, you shoot him? No. The question is whether there's a basis for other reasonable officers to submit to themselves, yes, this is a dangerous situation, and I should fire. The point . . . What's the risk of shooting Medina when you're firing into and potentially through the car, and you don't know where the other officer is? He has a general sense as to where he is. The bullets are on target, as to the operator, and it's the intent to stop it. I mean, just the whole concept that this vehicle is being used in the manner that it is, where it's contact with the cruiser, in the video you see actual contact, and hitting the back, and then just the movement. This is somebody totally out of control. And so you have an officer within the realm of reasonableness, fearful, okay, maybe he is totally protected by the car, maybe he's not. He's not certain. Judge Edgington found that he was behind it, but at the same time, he's with the other officers, he's not entirely certain where they are, but he knows that they're there. It's a very tight space. And the diagrams and the video show the time factor that create the question as to whether or not it's totally clear. And that's the issue for the court, that is it totally clear that he should not have fired? If there's a question that other officers . . . that qualified immunity does not exist here, the question is, do we have appellate jurisdiction? Because this is a case where the facts are either totally undisputed, or you're accepting all of their facts. This is a question of whether there are factual disputes, in which case we lack jurisdiction to address the qualified immunity question. There are cases out there dealing under what circumstances an officer may fire at a vehicle that's moving. And those cases are not entirely consistent, as to the Cowan, as to the O'Brien, as to this one that just came down earlier this year. There's a variation, and the question really is, is the law so clear that in this situation, Officer Cody was unnoticed that he should not? Might I suggest that this is exactly the sort of case in which a special verdict with factual interrogatories would help sharpen exactly the question that someday, in the event you lose a trial, a court will be asked to resolve as a matter of qualified immunity? I have no problem with the idea of trying this case. However, the law as I see it, is that this issue of qualified immunity should be pushed. Because, again, you have that human factor situation out there, where you have officers that have to act within this time frame of less than 40 seconds total. Really, it's about 15 seconds. And you have extremely violent behavior by the individual behind that car. Sounds like a good closing argument. Thank you. Excuse me, thank you, Mr. Malley. Mr. Paradisi, anything to add? Good afternoon, and may it please the Court. Matthew Paradisi on behalf of the estate of Ernesto Morales and Maria Morero. The facts of this case are pretty straightforward from Plaintiff's perspective. Mr. Morales was not suspected of any crime, nor were any of the other occupants of the vehicle. Each of the officers have testified that they were aware that the Morales vehicle was attempting to flee, not attempting to strike anyone. Three bullets entered the front windshield, as counsel mentioned. They entered the windshield at angles between 32.5 degrees off center and 45 degrees off center, all indicating that they were actually fired from outside the path of the moving vehicle. So Judge Edgington made crystal clear that, at least with respect to Mr. Cody, Officer Cody, he was completely outside of the course of the traveling Honda. Or a jury could at least find that based on the trajectory reports, the spent shell casings, and Officer Cody's own under oath testimony that he had established for himself a safe zone behind the nose of the cruiser. It's our position that Officer Cody, in that safe zone, knowing that Ernesto Morales was attempting to flee, was not at that point suspected of any crime, is not constitutionally permitted to shoot him dead. He fired three rounds through the front windshield. As the Morales vehicle traversed his position, another two shots entered in through the driver's side window, striking him in his face, entering through the left side of his mouth and exiting the right. And then a final shot, arguably one of the more fatal shots of the six that hit him, went through the rear driver's side window, through the seat, through the rear of Mr. Morales' left shoulder blade, ultimately getting lodged in his pectoral muscle. Each and every one of the officers testified that they were well aware that Mr. Morales was attempting to flee. The only thing that counsel points to as indicative of suspicion or danger is that my client was attempting to flee. Cowan tells us that flight is not enough. And that's really the only factor that counsel has alluded to in his papers, or Cody has referred to in his papers, as indicative or leaning towards the officer's constitutional right to fire at the vehicle. Cowan is the final word as far as this circuit is concerned. Opposing counsel has attempted to allude to a slip opinion in the O'Brien case, but I would submit that even if the court were to delve into the territory of the O'Brien case that was affirmed by this court in a summary order, that the facts are readily distinguishable from those now before the court. In O'Brien, the driver, first off, subsequently pled guilty to grossly negligent operation of his motor vehicle, essentially making a judicial admission at the time that the operation of his vehicle constituted an imminent harm. He also pled guilty to a third offense of driving while intoxicated. The undisputed record in that case also demonstrates that the driver had hit Officer O'Brien. I'm making Mr. Melle's point for him that we have on the one hand a case like O'Brien where quite clearly the facts go one way, and in Cowan we have a different case where we held the facts went the other way, and this case is somewhere in the middle so that a reasonable officer guided by those two guideposts wouldn't really have clear instructions as to what to do in this intermediate circumstance? No, Your Honor. I think this case falls even farther on the egregious side of the spectrum than Cowan does. And first we have at bottom none of the officers here testified that they had reasonable articulable suspicion as to any crime. In O'Brien there had been a call complaining of erratic driving beforehand, observations by the officer of erratic driving and behavior that the actual driver backed into and reversed into the officer who subsequently engaged deadly force. Here none of those factors are present. And that's the defendant's best case to point to. And in this case we have three occupants in a vehicle sitting in a Hartford neighborhood at 1 o'clock in the morning. A police car rolls up and the officers all exit the vehicle, notice the occupants of the vehicle, instruct them to stop. The vehicle moves in reverse for a moment after being struck on a first attempt to leave slowly, as the video demonstrates. The vehicle slowly is shifted into reverse. All of the officers on scene notice that the wheels of the Honda are turned to the right in an effort to proceed around the cruiser, not attempting to strike it again. And as the vehicle exits, Officer Cody, while behind the nose of the police cruiser, and while Officer Medina is far off in the grass off to the side of the parking lot, unleashes seven rounds at the Honda as it proceeds. Ultimately, even if Officer Cody had been in the line of the path of the Honda as it proceeded forward, Cowan tells us that firing at a moving, operated vehicle and rendering a conscious driver unconscious is not necessarily reasonable as a matter of fact. The fact that a car is bearing down on an officer doesn't give that officer carte blanche to use any manner of force, perceivable or theoretical, in order to attempt to effectuate the stop of that vehicle. On the summary judgment argument down below, we made the argument that this wouldn't authorize Officer Cody to lob a hand grenade in some direction in order to perceivably effectuate a stop. It doesn't give the officer carte blanche to do or utilize any means of force. That officer has to employ force that is reasonably calculated to address the threat. And in this case, ultimately, what Officer Cody should have done is simply stepped backward. And Garner teaches us that not every fleeing suspect needs to be shot dead, nor should they. It's not, ultimately, when we balance the interest of the state in apprehending a fleeing suspect, it's not enough that he's fleeing and you won't be able to catch him in order to shoot him dead. So it's our position that, given the factual disputes and given the clear violation of the precedent that's set by Cowan, that the court should affirm the motion for summary judgment below. I thought your argument was we should dismiss the appeal for lack of appellate jurisdiction. That's our first. All the rest of what you've been talking about is your fallback argument in case we disagree. Well, the initial position is that there's no jurisdiction, but I would concede that in the event there is a legal question on plaintiff's version of the facts, that the court would have to move on to the qualified immunity case anyway, and the court would have jurisdiction there. Thank you, Mr. Paradisi. Mr. Melle, you've reserved one minute. And hopefully I can say what I need to say in that minute. I just want to get back to Officer Cody. He positioned himself at a point close to the cruiser in front of the Honda. The cruiser then moved. He doesn't think he moved at all. He thinks when the cruiser came forward at an angle, he was somewhat in a safe zone. He also testifies that he's focused on the driver who's operating a standard. It's very, very noisy because he's trying to find the gears. The tires are revving up. There's a lot of stuff going on when the shooting occurs. And, Colin, I understand that. And if that's going to remain the law of this district, okay, then we're off to a trial. But the United States Supreme Court, and I submitted this the other day in the Casella file, when that shooting occurred, the totality of the circumstances, everything has to go in. And if there's any question, qualified immunity should apply. Thank you. Thank you. Excuse me. Thank you both. We'll reserve decision on this case.